### SLAIGHT *v.* HEDDEN.

### (*Circuit Court, E. D. New York.* November 14, 1888.)

CUSTOMS DUTIES — RIGHTS OF IMPORTERS — EXCLUDING AGENT FROM PUBLIC STORES.

Though the owner or importer of cigars from a foreign country may by his agent lawfully affix and cancel the internal revenue stamps required by section 3402 of the Revised Statutes to be affixed and canceled while such cigars are in the custody of the proper custom-house officers, yet the collector of the port may in the exercise of a sound discretion exclude such an agent from resorting to the public stores for that purpose; and, in the absence of legislation by congress or regulation by the treasury department, no action accrues thereby to the agent thus excluded.

At Law. On motion to dismiss.

This was an action against Edward L. Hedden, formerly the collector of the port of New York, to recover damages for having as such collector excluded the plaintiff from the public stores, which the plaintiff sought to enter for the purpose of affixing and canceling internal revenue stamps upon certain cigars imported from a foreign country by certain importers who had employed the plaintiff to affix and cancel such stamps. The plaintiff alleged that on or about July 1, 1885, he was employed for the term of four years by certain importers of cigars to affix and cancel the internal revenue stamps required by law to be affixed and canceled on all cigars, etc., which might be imported by them, or any of them, during the four following years, for which service the said importers had promised to pay the plaintiff 20 cents for every thousand cigars imported by them, and stamped and canceled by the plaintiff, and that such employment was worth to the plaintiff $6,000 per year; and that on May 1, 1886, the defendant, then being collector of the port of New York, willfully and maliciously, with intent to injure the plaintiff, and to deprive him of the benefits arising from said contract, refused to allow him access to the cigars imported by his employers, or to enter the room of the public stores where the said cigars were for the purpose of having said stamps affixed and canceled, and hindered the plaintiff from carrying out his contract with his said employers, to the plaintiff's damage in the sum of $24,000. The defendant denied these allegations. It appeared that during the incumbency of a former collector a regulation had been adopted

requiring that when owners or importers desired to have the internal revenue stamps required by law affixed and canceled upon cigars imported by them while such cigars remained in the public stores such agent must be a person approved of by the collector, and that no more than one such agent would be permitted to resort to the public stores. After the controversy herein arose, the secretary of the treasury abrogated this regulation, and communicated that fact to the defendant by letter dated July 13, 1886. At the close of the plaintiff's case, the defendant's attorney moved for a dismissal, and the direction of a verdict for defendant.

*Benjamin F. Tracy,* for plaintiff.

*Mark D. Wilber,* U. S. Atty., for defendant.

LACOMBE, J., (*after stating the facts as above.*) This case naturally divides into two periods,—the one prior, the other subsequent, to the departmental letter of July 13, 1886. Under section 3402 of the Revised Statutes it is plain that the importers had the right, and that it was their duty, to affix the stamps to these boxes of cigars, tobacco, and snuff. All that the statute expressly conceded to the importer was the right himself to attend and affix the stamps. It may be contended that he should be allowed to perform acts of this kind by an agent. Conceding that, however, it seems to be also a fair interpretation of this section (in connection with the other sections creating the office of collector) to construe it as warranting the adoption of such reasonable regulations touching the admission of agents to the premises of the custom-house as the collector may see fit to approve of. Now, it seems to me an entirely reasonable regulation of that character for any collector to say, where the importer or owner does not choose himself to come and stamp his own goods, but selects an agent, that the agent thus selected must be one who is satisfactory both to the collector and to the importer. Such appears to have been the regulation of the collectors at this port prior to Collector Hedden's appearance on the scene, because we find that Mr. Slaight had an express permit from the preceding collector, and we may reasonably infer that without such permit he would not have been allowed admission to the room. Collector Hedden certainly adopted the rule that, where importers undertake to affix these stamps by agents, the agents thus admitted to the public stores should be satisfactory to him as well as to the importer or owner. In the absence of express legislation on the subject, either by congress or his superior officer, that seems to have been a perfectly reasonable regulation, and one which it was within the collector's power to make. On July 13, 1886, however, the matter being called to the attention of the secretary of the treasury, this letter (of July 13, 1886) was sent.

Conceding that the rule laid down in that letter worked practically a repeal of the regulation theretofore prescribed by the collector of the port, and put the case upon a different footing, there are still difficulties in the way of the plaintiff's recovery, which I do not think he has as yet overcome. In the first place, it may be a matter of question (which I shall not undertake to pass upon now) as to whether any one other than the

owner or importer himself would be entitled to sue the collector for the exclusion from the custom-house of the agent he sent there. Waiving that question altogether, it appears by the evidence that subsequent to the revocation of his permit, a change occurred touching the employment of Col. Slaight. Some who prior to that time were his employers, and whose names were signed to the paper, which certified his agency to the collector, had since that time discontinued the employment. Now, despite the regulation or the order of the secretary of the treasury, Mr. Hedden was still entitled to be satisfied that Mr. Slaight, at the time of the subsequent application, did have an authorization to act for them from one or more importers, and, as it is conceded that the old authorization was defective in part, it was right and proper that he should do what his counsel undertook to do,—procure a new authorization, and present that. The earliest period at which that seems to have been presented to the collector—assuming that the transmission of it by the letter of July 22d was a sufficient presentation—was July 22d. That reduces the period for recovery—assuming there can be a recovery—to that subsequent to July 22d. For that period there is no proof of damages. All that there is here is a statement of the plaintiff that his compensation was proportioned to the total quantities of importations,—the total number of packages, or the total number of stamps. The statute shows us the number of stamps which should be put on each package. We have further testimony that between May 1, 1886, and May 1, 1888, such and so many stamps were affixed. There is no such segregation of the period as will show the number of stamps used or affixed between July 22d, or even July 13th, and the date of Collector Hedden's retirement. In view of the fact that it is in evidence on the plaintiff's own testimony that not all the importers of cigars and tobacco into this port were employing him subsequent to the letter of July 13, 1886, I fail to see that he has made proof sufficient to claim any damages. The motion of the defendant for a dismissal of the case, and the directing of a verdict for the defendant without putting in any proof, is granted. Plaintiff excepts.